[Nos. A122765, A122768. First Dist., Div. Five. Dec. 31, 2009.]

CELLPHONE TERMINATION FEE CASES.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.C. and II.

1112

**COUNSEL**

Bandas Law Firm, Christopher A. Bandas; Liuzzi / Murphy / Solomon and Frank C. Liuzzi for Objector and Appellant Sulekha Anand in No. A122765.

Bramson, Plutzik, Mahler & Birkhaeuser, Robert M. Bramson, Alan R. Plutzik, L. Timothy Fisher; Law Offices of Scott A. Bursor and Scott A. Bursor for Plaintiffs and Respondents Katherine Zill, William MacKenzie and Linda MacKenzie in No. A122765.

Quinn Emanuel Urquhart Oliver & Hedges, Dominic Surprenant, A. Brooks Gresham, Daniel H. Bromberg and Cheryl A. Galvin for Defendants and Respondents Sprint Spectrum, L.P., and Wirelessco, L.P., in No. A122765.

Quinn Emanuel Urquhart Oliver & Hedges, Dominic Surprenant, A. Brooks Gresham, Daniel H. Bromberg and Cheryl A. Galvin for Defendants, Appellants and Cross-respondents Sprint Spectrum, L.P., and Wirelessco, L.P., in No. A122765.

Bramson, Plutzik, Mahler & Birkhaeuser, Alan R. Plutzik, L. Timothy Fisher; Law Offices of Scott A. Bursor and Scott A. Bursor for Plaintiffs, Respondents and Cross-appellants Katherine Zill, William MacKenzie and Linda MacKenzie in No. A122768.

## OPINION

**SIMONS, J.**—Appellants Sprint Spectrum, L.P., and Wirelessco, L.P. (hereafter Sprint), are defendants in the present class action relating to Sprint's practice of locking its cell phone handsets, which prevents the use of the phones on other service providers' networks. Sprint appeals from the trial court's judgment dismissing the action pursuant to the parties' settlement and awarding attorney fees to counsel for cross-appellants, named class plaintiffs Katherine Zill, William MacKenzie, and Linda MacKenzie (hereafter plaintiffs). Sprint contends the trial court erred in refusing to enforce a provision in the settlement whereby the parties agreed the amount of the attorney fee award would be determined by an arbitrator, who would select an amount within a specified range. This case presents an issue of first impression: Did the trial court abuse its discretion in refusing to approve the fee arbitration provision, where it had already determined that the range of possible fee awards was reasonable and that there was no evidence of collusion by the parties to the settlement? We conclude the court did abuse its discretion, because its ruling accorded too large a role to objecting class members in the fee setting process. However, we also conclude that Sprint has failed to show actual prejudice resulted from determination of the amount of the attorney fee award by the court rather than by the arbitrator selected by the parties. We reject the cross-appeal by plaintiffs, as well as a separate appeal by an objector to the settlement, appellant Sulekha Anand (Anand). We affirm the judgment.

## BACKGROUND

In January 2006, plaintiffs filed a sixth amended consolidated complaint in this class action against Sprint. Plaintiffs alleged that cell phone handsets sold by Sprint secretly had been locked with programming locks "to make it

impossible or impracticable for customers to switch cell phone service providers without purchasing a new handset."[1] The complaint alleged causes of action for fraudulent, unlawful, and unfair business practices, and violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). Plaintiffs sought injunctive and declaratory relief, as well as restitution and/or disgorgement of all amounts wrongfully charged to the class members.

After discovery, the case was assigned to Judge Steven Brick for trial. Sprint filed 12 motions in limine, and, in June 2007, Judge Brick tentatively granted 10 of the motions in limine, including those seeking to exclude plaintiffs' two experts on damages.

Before Judge Brick completed a multiday hearing on the motions and issued final rulings, the parties reached a settlement. Under the settlement, a national class would be certified, and that class would release all claims concerning Sprint's handset locking practices. Although plaintiffs had claimed nearly $800 million in damages for a California-only class, Sprint did not agree to pay any money in the settlement. Instead, Sprint, among other things, agreed to inform its customers that its handsets contain software programming locks, and to unlock handsets for customers who have satisfied their contractual obligations to Sprint.

The parties were unable to reach an agreement on the amount of an attorney fee award for plaintiffs. Although plaintiffs preferred that the trial court make the determination, Sprint insisted that the amount of the award be determined in arbitration. Ultimately, the parties agreed the amount of an award for attorney fees and expenses would be determined through arbitration with a cap on the award of $2.95 million, which is a little under the hourly fees and expenses class counsel claimed to have incurred. Plaintiffs were guaranteed an award of at least $500,000, which is approximately the amount of expenses claimed by class counsel.[2] The parties agreed that any trial court rulings regarding attorney fees would not affect the settlement on the merits of plaintiffs' claims.

---

[1] The initial complaint in this case also challenged the validity of early termination fees in Sprint's cell phone contracts. The case was consolidated with other actions concerning other cell phone service providers' termination fees and handset locking practices. Thereafter, the trial court directed that the handset locking claims against Sprint be resolved separately from the other claims.

[2] The agreement's fee arbitration provision states in pertinent part: "Sprint shall pay reasonable attorneys' fees, costs and expenses in an amount to be determined by binding arbitration to be concluded within 30 days after [f]inal [a]pproval of the settlement. In that arbitration proceeding, Sprint shall not ask that attorneys' fees, costs and expenses be determined to be *lower* than $500,000, and [c]lass [c]ounsel shall not ask for attorneys' fees, costs and expenses be paid in an amount *higher* than $2,950,000. Class [c]ounsel will apply to the [c]ourt for approval of its attorneys' fees and costs, and that [a]pplication shall indicate that the fee award will be heard and determined by binding arbitration within 30 days following the

Judge Brick referred the matter to Judge Bonnie Sabraw, the judge presiding over the coordination proceeding that included the present case, for approval of the settlement. Judge Sabraw preliminarily approved the settlement and notice was given to the class. Only two class members objected to the settlement. The objectors contended the settlement was inadequate because, among other things, it did not provide compensation for any damages. Judge Sabraw rejected that objection, finding the settlement was "fair to the class given the strength of the claims and defenses in the case." The objectors also complained the fees claimed by class counsel were excessive in light of the limited benefits of the settlement. The court found reasonable the range of fees authorized by the fee provision, based on argument and documentation provided by plaintiffs.

Ultimately, however, the trial court refused to approve the fee arbitration provision. One of the objectors, Tom Gray, complained the provision did not permit him to participate in the arbitration. The only interest identified by objector Gray was an interest in ensuring the reasonableness of the fee award. Sprint was willing to allow the objectors to participate, but plaintiffs argued the agreement did not permit the objectors to do so. Class counsel informed the trial court that plaintiffs "strongly prefer to have [the trial court] determine the amount of a reasonable fee," that plaintiffs "accepted a fee arbitration with the range limitations reluctantly, only as a concession to Sprint," and that plaintiffs "certainly would not have agreed to allow objector participation in the arbitration." After taking additional evidence on collusion, the court found the fee provision was negotiated separately from the settlement on the merits and counsel had not agreed to a larger fee in exchange for a less favorable settlement. Nevertheless, the court concluded the fee arbitration provision was "void in its entirety because it improperly excluded the members of the class from the fee application process."

The trial court conducted proceedings to determine a reasonable attorney fee award. The court determined plaintiffs were entitled to a fee award under Code of Civil Procedure section 1021.5 and Civil Code section 1780, subdivision (d), and, based on the hours worked by class counsel and reasonable hourly rates, the lodestar amount was nearly $2.3 million. The court found that class counsel had achieved only limited success, but still awarded fees in the lodestar amount after applying positive and negative multipliers that offset each other. The court also awarded approximately $200,000 in costs for a total award of almost $2.5 million. A judgment of dismissal was entered on June 11, 2008.

---

[f]inal [a]pproval [h]earing, but that the amount of fees, costs and expenses awarded will be no less than $500,000 nor more than $2,950,000, all inclusive."

Sprint filed a timely appeal, challenging the trial court's refusal to approve the fee arbitration provision. Plaintiffs filed a timely cross-appeal, challenging the court's failure to include in the award approximately $300,000 in expenses. Anand also appealed, challenging the reasonableness of the fee award.[3] We jointly consider all the appeals and issue a single opinion. (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 551 & fn. 3 [96 Cal.Rptr.3d 127].)

## DISCUSSION

I. *Appeal No. 122768 (Sprint and Plaintiffs)*

A. *The Trial Court Erred in Refusing to Approve the Fee Arbitration Provision*

Sprint contends the trial court abused its discretion in refusing to approve the fee arbitration provision in the settlement. We agree.

1. *General Principles Regarding Settlement of Class Actions*

█ The settlement of a class action requires court approval to prevent fraud, collusion, or unfairness to the class. (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800 [56 Cal.Rptr.2d 483] (*Dunk*).) "The court must determine the settlement is fair, adequate, and reasonable. [Citations.] The purpose of the requirement is 'the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties.' [Citation.]" (*Id.* at p. 1801, fn. omitted.) " 'The court has a fiduciary responsibility as guardian[] of the rights of the absentee class members when deciding whether to approve a settlement agreement.' [Citations.]" (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129 [85 Cal.Rptr.3d 20] (*Kullar*).)

█ "The trial court has broad discretion to determine whether the settlement is fair. [Citation.] It should consider relevant factors, such as the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. [Citation.] . . . Due regard should be given to what is otherwise a private consensual agreement between the parties. The inquiry

---

[3] On August 26, 2009, we dismissed an earlier appeal by Anand in *Cellphone Termination Fee Cases* (A121576) (Alameda County Super. Ct., JCCP No. 4332I).

'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.' [Citation.]" (*Dunk, supra,* 48 Cal.App.4th at p. 1801; see also *In re Microsoft I–V Cases* (2006) 135 Cal.App.4th 706, 723 [37 Cal.Rptr.3d 660] (*Microsoft*).) "[A] presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. [Citation.]" (*Dunk,* at p. 1802; see also *Microsoft,* at p. 723.) "Public policy generally favors the compromise of complex class action litigation. [Citation.]" (*Microsoft,* at p. 723, fn. 14; see also *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1151 [102 Cal.Rptr.2d 777] (*7-Eleven*).)

■ Rule 3.769 of the California Rules of Court sets forth the procedures for settlement of class actions in California. (See also Code Civ. Proc., § 581, subd. (k).) A two-step process is required. First, the court preliminarily approves the settlement and the class members are notified as directed by the court. (Cal. Rules of Court, rule 3.769(c)–(f).) "The notice must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the settlement hearing and state any objections to the proposed settlement." (Cal. Rules of Court, rule 3.769(f).) Second, the court conducts a final approval hearing to inquire into the fairness of the proposed settlement. (Cal. Rules of Court, rule 3.769(g).) If the court approves the settlement, a judgment is entered with provision for continued jurisdiction for the enforcement of the judgment. (Cal. Rules of Court, rule 3.769(h).)

Trial court orders approving class action settlements and awarding attorney fees are reviewed for abuse of discretion. (*7-Eleven, supra,* 85 Cal.App.4th at pp. 1145–1146, 1164.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 [76 Cal.Rptr.3d 250, 182 P.3d 579], fns. omitted.) Moreover, " '[t]he discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' " (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365] (*Westside*); see also *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393–394 [33 Cal.Rptr.3d 644].)

## 2. The Trial Court Lacked a Legal Basis to Refuse to Approve the Fee Provision

In reviewing an attorney fee provision in a class action settlement agreement, the trial court has an independent duty to determine the reasonableness of the award. (*Garabedian v. Los Angeles Cellular Telephone Co.* (2004) 118 Cal.App.4th 123, 128 [12 Cal.Rptr.3d 737]; *Dunk, supra,* 48 Cal.App.4th at p. 1801.) The court should also consider whether there is any evidence of fraud or collusion in the fashioning of any agreement as to attorney fees. (*Dunk,* at p. 1801.) As the *Dunk* court explained, " '. . . "[A] defendant is interested only in disposing of the total claim asserted against it[;] . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." [Citations.] . . . [¶] [T]he divergence in financial incentives [between the class and counsel] creates the "danger . . . that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." [Citations.]' [Citation.]" (*Dunk, supra,* 48 Cal.App.4th at p. 1808.)

The trial court in this case expressly found that the fee range provided for in the fee arbitration provision was reasonable. From the class members' perspective, review of the reasonableness of the fee award is a safeguard against the possibility of collusion. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than [the defendant] could otherwise have obtained." (*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 964.)[4] At the time the trial court determined the fee range was reasonable, the court had before it extensive documentation and argument from plaintiffs. This included plaintiffs' oral and written argument justifying a fee award at the maximum end of the range in light of the benefits of the settlement and the difficulty and risk of the litigation, as well as six declarations from class counsel documenting the hours expended on the litigation and the reasonableness of the hourly rates. In its order, the court stated: "Based on the [c]ourt's knowledge of the case and the representations at the hearing, the [c]ourt is comfortable that the range is reasonable and that the arbitrator could award fees and costs anywhere in the range without abusing his or her discretion." Because the trial court found that a fee award

---

[4] " 'California courts may look to federal authority for guidance on matters involving class action procedures.' [Citations.]" (*Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1264, fn. 4 [24 Cal.Rptr.3d 818].)

at even the top of the range would not be excessive, the purposes of review of the award for reasonableness were satisfied from the perspective of the class.[5]

Not only did the trial court find the fee range reasonable, but it also found there was no evidence of collusion. The court made that finding based on briefs on the collusion issue from the parties and an objector, and declarations from counsel regarding the settlement negotiation process. The court found the parties reached agreement on the material terms of the settlement before negotiating a fee for class counsel, class counsel did not seek a larger fee award in exchange for a smaller class recovery, and "the substantive settlement was not linked to the fee award in a way that might have prejudiced the members of the class." The fact that class counsel did *not* receive "red-carpet treatment" on fees (*Dunk, supra,* 48 Cal.App.4th at p. 1808) also justified diminished concern about collusion. Class action settlements frequently contain a "clear sailing" agreement, whereby the defendant agrees not to object to an attorney fee award up to a certain amount. (See *Consumer Privacy Cases, supra,* 175 Cal.App.4th at pp. 552–553.) Plaintiffs in this case obtained *no* such agreement; instead they secured only an agreement to a range with a floor equal to their expenses and a ceiling slightly lower than class counsel's lodestar plus expenses with no multiplier. At the fee determination stage, Sprint vigorously opposed plaintiffs' request for fees at the top of the range and argued plaintiffs should receive an award at the bottom of the range. Finally, the parties' agreement that the substantive terms would stand even if the court refused to approve the fee arbitration provision significantly reduced the possibility of any conflict of interest affecting the substantive terms of the settlement. (See *Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 450 [25 Cal.Rptr.3d 387] (*Robbins*).)

Although the trial court found reasonable the range of fees in the fee arbitration provision and found the provision was not the product of collusion, the court declared the provision "void in its entirety" because it did not provide for the participation of objecting class members in the arbitration. Notably, the notice to the class of preliminary approval of the settlement described the range of permissible fee awards in the arbitration. The objectors had an opportunity to present their objections to the settlement's fee provision in light of the documentation provided by plaintiffs' counsel; objector Gray did in fact present his objections to the fee provision in writing and at

---

[5] The trial court did not find that disapproval of the fee arbitration provision was necessary to ensure that class counsel received an adequate fee because, for example, the bottom of the range was too low to constitute a reasonable fee for class counsel. Accordingly, we need not and do not address whether there may be circumstances justifying disapproval of a fee arbitration agreement on such grounds.

the hearing on approval of the settlement.[6] And the documentation provided by plaintiffs at the approval stage alone would have been sufficient to support a fee award determination. (See *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254–255 [110 Cal.Rptr.2d 145] (*Wershba*).) Nevertheless, the court asserted, "[t]he settlement agreement (and the included fee and cost arbitration provision) is between the class and Sprint, so the members of the class should have the opportunity to make filings and presentations at the fee arbitration . . . ."[7] The court also asserted that it "has the obligation to ensure both that a class settlement is substantively fair and that the settlement process is transparent and permits class members to participate."

■ The trial court's statements reflect a misapprehension of the limited role of unnamed class members in class actions, including in settlements. "A class action is a representative action in which the class representatives assume a fiduciary responsibility to prosecute the action on behalf of the absent parties. [Citation.] The representative parties not only make the decision to bring the case in the first place, but even after class certification and notice, they are the ones responsible for trying the case, appearing in court, and working with class counsel on behalf of absent members. The structure of the class action does not allow absent class members to become active parties, since 'to the extent the absent class members are compelled to participate in the trial of the lawsuit, the effectiveness of the class action device is destroyed.' [Citation.] The very purpose of the class action is to 'relieve the absent members of the burden of participating in the action.' [Citation.]" (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1434 [95 Cal.Rptr.2d 57], fn. omitted.) The court's responsibility to scrutinize the fairness of settlements rests, in part, on the fact that unnamed class members are not direct participants in settlement negotiations. (See *Mark v. Spencer* (2008) 166 Cal.App.4th 219, 227 [82 Cal.Rptr.3d 569].)

In this case, there was particularly little justification for the participation of unnamed class members in the fee arbitration because, although the amount of the fee arbitration award was of great concern to Sprint, the award would have had no direct impact on the class members, who would have received the same relief regardless of the results of the arbitration. (Cf. *Robbins, supra*, 127 Cal.App.4th at pp. 449–450 [size of attorney fee award in shareholders' derivative suit will have "direct pecuniary impact on the shareholders, or the

---

[6] As we discuss later, the trial court could have withheld final approval until after the fee arbitration, in which case the objectors could have presented any objections to the actual fee award selected by the arbitrator.

[7] Subsequently, the trial court reached the opposite conclusion, finding that the parties to the settlement agreement were Sprint and the class representatives, which prevented class members from participating in the arbitration under the arbitration association rules. The court did not address how that conclusion affected its earlier justification for requiring the participation of unnamed class members in the arbitration.

corporation, or both, as the negotiated fee can or might reduce the amount of any common fund recovered by the stockholders as a result of the litigation, be paid out of the corporation's assets, or where covered by insurance, result in increased premiums or difficulty in obtaining insurance in the future"].) In other words, the class members had no clear interest in determining the amount class counsel received within the range specified in the settlement agreement.[8]

A similar point was made by the court in *State of New York v. Philip Morris Inc.* (N.Y.App.Div. 2003) 308 A.D.2d 57 [763 N.Y.S.2d 32], which involved the settlement of a class action against the tobacco company defendants. The trial court approved a settlement agreement under which the amount of fees would be determined by a panel of arbitrators if the defendants' and the plaintiffs' counsel were unable to agree on a fee. (*Id.* at pp. 59–61.)[9] The State of New York was not separately represented at the arbitration, "because any fee award would come solely out of [the] defendant tobacco companies' pockets and would not affect the [s]tate's recovery in any fashion." (308 A.D.2d at p. 66.) The court pointed out that "[t]he whole concept of 'collusion' . . . makes no sense in the context of this litigation. If the tobacco defendants had wanted to 'collude' in paying too high a legal fee, . . . they could have reached an agreement with [o]utside [c]ounsel without going through the time, expense and uncertainty of arbitration." (*Ibid.*) That reasoning applies equally in this case.

■ Moreover, the decisionmaking process in class actions is not, generally speaking, transparent to the unnamed class members, whether the decisions relate to litigation strategy or the settlement process. This lack of transparency is reflected in the limited ability of objectors to obtain discovery regarding settlement negotiations. " 'It is well established . . . that objectors are not entitled to discovery concerning settlement negotiations between the parties without evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process.' [Citations.]" (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 748 [99 Cal.Rptr.3d

---

[8] Plaintiffs do not contend the California Rules of Court provide objectors a right to participate in fee arbitrations. California Rules of Court rule 3.769(f) simply provides for notice to the class and an opportunity to "appear at the settlement hearing and state any objections to the proposed settlement." The objectors in this case *did* have an opportunity to present their objections to the settlement, including their objections to the fee range in the fee arbitration provision, in light of the documentation provided by plaintiffs. Rule 23(e) of the Federal Rules of Civil Procedure (28 U.S.C.), relating to settlement of class actions, also provides only a right to present objections. Federal Rules of Civil Procedure, rule 23(h) (28 U.S.C.), relating to attorney fee awards, provides a right to object to motions for fees, gives the court discretion to hold a hearing, and permits the court to refer issues to a special master or magistrate judge, without providing for participation by objectors in such proceedings.

[9] Approval of the settlement had occurred in an earlier decision, *State of New York v. Philip Morris Inc.* (N.Y.App.Div. 1999) 263 A.D.2d 400 [693 N.Y.S.2d 36].

436].) Ultimately, the key consideration for the trial court is the substantive fairness of the settlement terms, as well as the reasonableness of the fee award and any evidence of collusion, rather than the *transparency* of the process by which the terms of the settlement were accomplished. As the court stated in *In re Corrugated Container Antitrust Litigation* (5th Cir. 1981) 643 F.2d 195, 212: "[T]he district court's most important function in reviewing compromises of class actions is its consideration of the settlement terms. [Citation.] It is, ultimately, in the settlement terms that the class representatives' judgment and the adequacy of their representation is either vindicated or found wanting."

The fee arbitration contemplated in this case effectively would have been an extension of the settlement negotiations; it was the process settled upon by the parties for determining a fee award amount within the range presented to the trial court for approval. If the parties had been able to agree upon a single figure to present to the trial court, the objectors would have had no opportunity to participate in the determination of that figure. Moreover, under the fee arbitration provision, the unnamed class members would not have been denied adequate opportunity to address the issue of attorney fees. After tentative approval of the settlement, the unnamed class members had an opportunity to present any evidence of collusion and to object to the reasonableness of the fee range provided for in the agreement, in light of plaintiffs' extensive documentation. The objectors would have had no greater opportunity to object had the agreement been for a specific amount of fees.

It is instructive to compare this case to *Wershba, supra,* 91 Cal.App.4th 224. There, the parties reached a settlement on the merits of a class action but were unable to reach a settlement on fees. (*Id.* at p. 232.) The issue was submitted to mediation before a retired judge and concluded with a " 'last offer' " or " 'baseball' " arbitration "based upon briefing and argument by the parties." (*Id.* at pp. 232, 254.) The mediator selected the figure proposed by the defendant and the entire settlement was preliminarily approved by the trial court and fully approved after a hearing in which objectors participated. (*Id.* at pp. 232–234.) On appeal, an objector contended the award of fees was improper because it was not based on either the lodestar method or the percentage of recovery method, "but rather was the result of an arbitrary procedure whereby the mediator was instructed to choose between [the defendant's] last offer and the plaintiffs' attorneys' last demand." (*Id.* at p. 254.) The Court of Appeal rejected that argument because "[t]he [trial] court made clear that it did not use this method for calculating attorney fees, but that it was making 'an independent assessment of the appropriate amount' of a fee award and on that basis found that the fees requested were 'reasonable.' " (*Ibid.*) The difference between the present case and *Wershba* is that the trial court here made the determination of reasonableness as to the range of fee awards before the fee arbitration took place. It appears the trial

court in *Wershba* had no more information before it regarding the hours spent by class counsel on the class action than the trial court in this case did at the time it refused to approve the fee arbitration provision. (*Id.* at pp. 254–255.) Thus, the objectors in *Wershba* had no greater opportunity to participate in the determination of the amount of fees obtained by class counsel than the objectors would have had in this case under the settlement agreement.[10] What is unexplained in the trial court's ruling in this case is why the objectors must be permitted to participate in the arbitration to determine the ultimate figure simply because the parties were able to agree only on a fee range or because they did not conduct the arbitration before presenting the settlement agreement to the court.[11]

 It is true that, had the settlement agreement provided for the trial court to determine the amount of fees, objectors would have had an opportunity to participate in that process. In fact, counsel for objectors in the present case did participate in the court's fee determination proceedings. However, the fact that objectors might have that opportunity where a court is determining the amount of fees does not mean the trial court in this case had a legal basis to require the participation of objectors in the arbitration. As noted previously, the "purpose" of requiring court approval of class action settlements is to protect class members ". . . '. . . whose rights may not have been given due regard by the negotiating parties.' [Citation.]" (*Dunk, supra*, 48 Cal.App.4th at p. 1801.) Objectors may participate in settlement approval proceedings relating to fees to assist in determining whether there is any indication of collusion and the reasonableness of the overall fee award. (*Id.* at pp. 1800–1801; accord, *Microsoft, supra*, 135 Cal.App.4th at p. 723.) Where, as here, the objectors have had an opportunity to present their views on those matters, in light of documentation adequate to support a reasonableness determination, and the trial court has determined there was no collusion and

---

[10] The trial court cited to *Wershba* in its order on fees, adding a parenthetical, "arbitrator decided what fees the parties would submit to the [c]ourt, but the [c]ourt made 'an independent assessment of the appropriate amount' in a public proceeding." In fact, the trial court in *Wershba* merely determined that the amount selected by the arbitrator was reasonable (*Wershba, supra*, 91 Cal.App.4th at p. 254), which is the same determination made by the trial court in this case regarding the range provided for in the fee arbitration provision.

[11] Although apparently somewhat uncommon, arbitrations to determine fee awards in class actions are not unknown. (See *Bradlow v. Castano Group* (N.D.Cal., Apr. 3, 2008, No. C06-05344 MJJ) 2008 WL 929613 [nonpub. opn.]; *Brown & Williamson Tobacco Corp. v. Chesley* (2004) 7 A.D.3d 368 [777 N.Y.S.2d 82]; *State of New York v. Philip Morris Inc., supra*, 308 A.D.2d 57 [763 N.Y.S.2d 32]; *Wershba, supra*, 91 Cal.App.4th at p. 232; *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1144 [269 Cal.Rptr. 844]; see also Dickerson, Class Actions: The Law of 50 States (2009) § 10.01, p. 10-5 ["Alternatively, the parties may provide in stipulation of settlement that a panel of arbitrators may resolve such issues as attorneys' fees."]; *Kullar, supra*, 168 Cal.App.4th at pp. 122–124 [fee amount determined in mediation].) There is no indication in any of these cases that objectors participated in the fee arbitrations.

the fee range is reasonable, the court has satisfied the purposes of its review of the agreement on fees. (See *Dunk*, at p. 1801 [the court's inquiry " 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of' " collusion and that the settlement is reasonable].)[12] Here, the trial court's refusal to approve the fee arbitration provision was not tethered to that purpose; that is, the trial court's requirement of objector participation in the arbitration lacked any nexus to the goal of protecting unnamed class members, whose interests would not have been affected by the fee arbitration. Ultimately, the court misapprehended its role in the class action settlement process and failed to give "[d]ue regard . . . to what is otherwise a private consensual agreement between the parties." (*Dunk*, at p. 1801; see also *Evans v. Jeff D.* (1986) 475 U.S. 717, 726–727 [89 L.Ed.2d 747, 106 S.Ct. 1531].)

Importantly, the trial court could have, and perhaps should have, delayed final approval of the settlement, including determination of the reasonableness of the fee award, until after the arbitration, which would have made this case essentially identical to *Wershba, supra*, 91 Cal.App.4th 224.[13] However, in the circumstances of this case, the court had no legal basis to refuse to approve the fee arbitration provision for lack of objector participation. The trial court's ruling was particularly problematic in light of the public policies favoring arbitration and the settlement of complex class actions. (See *Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1203 [78 Cal.Rptr.3d 519, 186 P.3d 1]; *Microsoft, supra*, 135 Cal.App.4th at p. 723, fn. 14.) The trial court abused its discretion in refusing to approve the fee arbitration provision. (See *Westside, supra*, 33 Cal.3d at p. 355.)

### B. *Sprint Has Not Shown It Was Prejudiced by the Trial Court's Error*

Although Sprint has shown the trial court abused its discretion in refusing to approve the fee arbitration provision, the error is not cause to reverse the judgment unless Sprint demonstrates prejudice.

---

[12] The full language from *Dunk*, previously quoted in full (pp. 1117–1118, *ante*), instructs the trial court to watch out for fraud, overreaching, *or* collusion and to ensure that the settlement is " 'fair, reasonable and adequate to all concerned.' " (*Dunk, supra*, 48 Cal.App.4th at p. 1801.) For the sake of simplicity, we refer only to collusion and reasonableness. We believe the reasonableness inquiry encompasses the fairness and adequacy of the settlement. It is conceivable that in some cases there could be fraud or overreaching without collusion, but in this case the trial court considered all the concerns raised by the objectors under the rubrics of collusion and reasonableness.

[13] That suggestion was made by Sprint's counsel below, who told the trial court, "if Your Honor would feel more comfortable retaining jurisdiction so we can go have the fee arbitration . . . and then come back here for your ultimate approval, that would be acceptable."

■ Under article VI, section 13 of the California Constitution, "No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (See also Code Civ. Proc., § 475 [a judgment may be reversed only for prejudicial error, and prejudice may not be presumed]; *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347–348 [48 Cal.Rptr.3d 875].) Under *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*), the miscarriage of justice standard for reversal requires a showing "that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See also *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–802 [16 Cal.Rptr.3d 374, 94 P.3d 513] (*Cassim*).) " '[A] "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' [Citation.]" (*Cassim*, at p. 800.) The *Watson* test applies to the type of error at issue in this case, which involves submission of the fee determination to the trial court rather than to the arbitrator selected by the parties. (See *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1397 [1 Cal.Rptr.2d 446] (*Beasley*) [*Watson* test applied where trial court erred in submitting an equitable issue to the jury]; see also *Cassim*, at pp. 801–802 [citing *Beasley* with approval].)

Sprint acknowledges the *Watson* test of prejudice applies. It argues it is reasonably probable the arbitrator's fee award would have been more favorable to it because, due to the "minimal practical benefits" obtained by plaintiffs in the settlement, there was "ample ground for reducing class counsel's fees far below the lodestar." Sprint emphasizes, among other things, that plaintiffs obtained no monetary recovery, despite the fact that plaintiffs' "economist" calculated "$789 million in damages" for a California class alone; the injunctive relief allows class members to unlock their handsets in only limited circumstances, at the end of a lengthy contract term or after payment of a significant early termination fee; there is no evidence unlocked handsets can be used on other service providers' networks; and the other provisions of the settlement provide little practical benefit.

Sprint makes a strong argument that the arbitrator selected by the parties could reasonably have exercised his discretion to apply a significant negative multiplier to class counsel's lodestar, but Sprint fails to appreciate the difficulty of showing prejudice in the circumstances of this case. The present case is not analogous to those in which a piece of relevant evidence was excluded at trial, or where a jury was exposed to improper evidence, argument, or instructions. In such circumstances, it is relatively straightforward for the reviewing court to analyze whether, for example, it is reasonably probable the jury would have rendered a different verdict had inadmissible evidence been excluded. (See, e.g., *People v. Lindberg* (2008) 45 Cal.4th 1, 26

[82 Cal.Rptr.3d 323, 190 P.3d 664].) The prejudice issue in this case is not whether the outcome would have been different had the decision maker considered different evidence, instructions, or argument. Instead, Sprint must show it is reasonably probable the arbitrator would have reached a more favorable conclusion based on the *same* evidence and argument presented to the trial court. In this context, it is not enough for Sprint to show that a different reasonable decision maker could have rendered a more favorable fee determination. Instead, Sprint must show a likelihood that it was denied a fair and impartial determination of the issue.

The error in this case is comparable to that in *Beasley, supra,* 235 Cal.App.3d 1383. In that case, a class action challenging a bank's fees assessed to credit card customers, the trial court erred in submitting to the jury the legal question of whether the fees were valid as liquidated damages. (*Id.* at pp. 1388–1389.) The Court of Appeal rejected the bank's contention the error was reversible per se and required the bank to show actual prejudice under the *Watson* test. (*Beasley,* at pp. 1396–1397.) The validity question turned on an assessment of witness credibility, but the court did not frame the prejudice issue as whether the evidence was such that the trial court could have reached a different conclusion than the jury. Instead, the court framed the issue in terms of the fairness of the proceedings: "the presumption is indulged that [the appellant] had a fair trial, and [the appellant] has the burden of showing otherwise. [Citation.]" (*Id.* at p. 1397; see also *Gann v. Williams Brothers Realty, Inc.* (1991) 231 Cal.App.3d 1698, 1704 [283 Cal.Rptr. 128] (*Gann*) ["it is presumed that the party had the benefit of a fair and impartial trial"].) The court acknowledged this presented a great obstacle to relief on appeal, stating, "Indeed, it is difficult to conceive how actual prejudice might be demonstrated in such a situation." (*Beasley,* at p. 1397; see also *Gann,* at p. 1704.)

■ The burden of showing actual prejudice is very onerous in this case as well. It is well established that "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court . . . .' [Citations.]" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303]; see also *Consumer Privacy Cases, supra,* 175 Cal.App.4th at p. 556.) Sprint does not argue the trial court abused its discretion in determining the amount of the ultimate fee award, and it points to nothing in the trial court's order indicating that the court misunderstood the nature of the action or settlement. Absent a showing of actual bias, equivalent unfairness, or some other exceptional circumstance, it is entirely speculative whether, based on the same evidence and argument, the arbitrator selected by the parties would have applied a larger negative multiplier to the

fee award.[14] This is particularly true in light of the careful consideration reflected in the trial court's order on fees[15] and the fact that the agreed-upon range already accounted for the minimal success to some extent, since the top of the range was class counsel's lodestar with no multiplier.[16] Moreover, the arbitrator might have awarded the over $300,000 in expenses that the trial court declined to award under the applicable fee shifting statute.

This does not mean that Sprint was without any effective remedy when the trial court refused to approve the fee arbitration provision. Immediate review by extraordinary writ was an available vehicle to challenge the trial court's ruling. (*Beasley, supra,* 235 Cal.App.3d at p. 1397; *Gann, supra,* 231 Cal.App.3d at p. 1704.) "[A]s a practical matter, by omitting to seek immediate writ review, [the defendants] presented [themselves] with the daunting (perhaps impossible) task of proving actual prejudice on appeal." (*Beasley,* at p. 1398.) One reason to allow judgments to stand where the error relates only to the identity of the decision maker is the aggrieved party "should not be able to play 'Heads I win. Tails you lose' by waiting until after judgment to seek review." (*Gann,* at p. 1704; see also *McIntosh v. Bowman* (1984) 151 Cal.App.3d 357, 363 [198 Cal.Rptr. 533].) Moreover, this approach to prejudice avoids the waste of judicial resources that would result from reversing the trial court's judgment as to the fee award where the court's error could have been corrected before the trial court conducted its fee determination proceedings. (*Beasley,* at p. 1398; see also *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604].)

 We therefore conclude that, although the trial court erred in refusing to approve the fee arbitration provision, the error is not a basis for reversal

---

[14] Sprint asserts it preferred to have the fee award determined by an arbitrator rather than by Judge Sabraw because of prior decisions the judge made that were favorable to plaintiffs. On March 11, 2009, Sprint filed a request for judicial notice of two prior decisions of Judge Sabraw, which it contends are relevant on this point. We grant the request for judicial notice. However, the decisions do not demonstrate any bias on the part of Judge Sabraw, and, in fact, Sprint disclaims any contention that the judge was biased. Sprint does claim it perceived Judge Sabraw had a favorable view of class counsel's performance, but Sprint acknowledges that does not constitute the type of bias that can render a proceeding unfair. (See *Liteky v. United States* (1994) 510 U.S. 540, 550–551 [127 L.Ed.2d 474, 114 S.Ct. 1147].)

[15] The trial court acknowledged the "strong dispute" between the parties regarding the benefit conferred on the class and discussed each of the substantive elements of the settlement in light of the parties' arguments and evidence. The court recognized that the settlement would confer a monetary benefit on "a relatively small percentage of the total class" and that plaintiffs' contention that the settlement would be a catalyst for change in the industry was speculative.

[16] The trial court's award actually reduced the lodestar by applying a negative multiplier of 0.75 in light of plaintiffs' limited success, but offset that reduction with a positive multiplier for the contingent risk assumed by counsel and for counsel's effective coordination of cases in different states.

because Sprint has failed to demonstrate any actual prejudice. (See *Beasley, supra*, 235 Cal.App.3d at p. 1398.)

### C. *Plaintiffs Have Forfeited Their Claim on Cross-appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Appeal No. A122765 (Anand)**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The trial court's judgment is affirmed. All parties shall bear their own costs on appeal.

Jones, P. J., and Needham, J., concurred.

The petition of respondent Sprint Spectrum, L.P., for review by the Supreme Court was denied April 14, 2010, S180155. George, C. J., did not participate therein.

---

*See footnote, *ante*, page 1110.