Filed 10/24/13  In re COMPLETE Cases CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re COMPLETE CASES. | G046913<br><br>(JCCP No. 4521; O.C. Super Ct. Nos. 07CC01296 & 07CC01297)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nancy Wieben Stock, Judge.  Affirmed.

The Martini Law Group and Steven D. Martini for Appellant.

The Senators (Ret.) Firm, Thomas M. Moore and Ronald T. Labriola for Respondents Nicole Lazar, Cameron Smith and the Class.

Venable LLP, Ben D. Whitwell and Ryan M. Andrews for Respondent Abbott Medical Optics, Inc.

\*          \*          \*

The unusual title of this case reflects the fact it arises out of the settlement of a class action suit brought against Advanced Medical Optics, now known as Abbott Medical Optics (AMO), for allegedly making misleading statements concerning the disinfecting capabilities of the company's "COMPLETE MoisturePLUS" multipurpose contact lens solution (the "Complete Contact Lens Solution") in the mid-2000's. The basic theory of the class action was that the product had been marketed as a "multipurpose" contact lens solution with the ability to "disinfect" contact lenses, when, in fact, it did not disinfect lenses of a microorganism known as Acanthamoeba whose presence in the eye can cause Acanthamoeba keratitis, which in turn can lead to corneal ulcers and even blindness. Prominent in the pleadings was the recall of the Complete Contact Lens Solution after a report by the United States Centers for Disease Control noted an increased risk of Acanthamoeba kerititis in users of the solution.

The class action suit was settled in 2011. Besides requiring the product to be pulled from the market, the settlement consisted of two basic components: The first part involved reimbursements to class members. AMO would pay 100 percent of the price of every bottle of the contact lens solution purchased if the class member submitted proof of purchase. If a class member didn't have proof of purchase but did have bottles of the solution, the class member would be reimbursed a small amount of money depending on the size of the bottle ($4 for a 2 ounce bottle, $5 for a 4 ounce bottle, $6 for "an Active Pack" and $9 for 12 and 16 ounce bottles.) And if class members had no proof of purchase or bottles, they could, by declaring under penalty of perjury they purchased the solution, receive a coupon for $10 worth of other AMO products. The settlement also contemplated a payment by AMO of some $1,847,529 in attorney fees and costs.

The second part involved the establishment of a cy pres fund in the event the total amount of reimbursements to class members did not reach $650,000. Any difference was to be paid to Guide Dogs of America (with funding earmarked for

2

California residents) and Children's Vision First. Guide Dogs of America is self-descriptive in its mission. Children's Vision First provides free eye exams and prescription glasses to needy children.

A final fairness hearing was scheduled for March 23, 2012. On March 7, appellant Camille Jacinto Hale sent a letter to the court, objecting to the proposed settlement. Besides asserting she had received an inadequate notice of her right to object,[1] Hale's letter objected to the beneficiaries of the cy pres fund, and also asserted the attorney fees were too high.

Hale did not show up for the fairness hearing, which was held on time on March 23, 2012. The trial judge approved the cy pres portion of the settlement, but cut the attorneys fee request to $750,000. The judge reasoned that if the $650,000 fund were analogized to a contingency fee of somewhere between 30 and 40 percent, then, given a multiplier of three, the result would be a fee "in the range of $750,000," which was the figure she chose. The formal judgment was filed that very day, and within about 50 days Hale filed this appeal.

We affirm the judgment. In California, cy pres funds pursuant to class action settlements are governed by section 384 of the Code of Civil Procedure. We quote the relevant subdivisions of the statute in a footnote, and, as the italicized words show, the fit between the litigation generating the fund and the beneficiaries of the fund need not be coterminous.[2] Rather, the standard is, as the court said in *In re Microsoft I-V*

---

[1] She argued the notice she received did not "make clear" her right to object or contain a "clear deadline," though the notice certainly did give March 23, 2012 in Department CX-105 as the date and place of the hearing. In this appeal Hale does not raise the issue of inadequate notice so we need not discuss the matter further.

[2] The statute consists of three subdivisions, (a), (b), and (c), but subdivision (c) simply says the first two subdivisions don't apply to class actions against governmental entities or employees. Subdivisions (a) and (b) provide:

"(a) It is the intent of the Legislature in enacting this section to ensure that the unpaid residuals in class action litigation are distributed, to the extent possible, in a manner designed either *to further the purposes of the underlying causes of action, or to promote justice for all Californians*. The Legislature finds that the use of funds collected by the State Bar pursuant to this section for these purposes is in the public interest, is a proper use of the funds, and is consistent with essential public and governmental purposes.

3

*Cases* (2006) 135 Cal.App.4th 706, is appropriate usefulness in fulfilling the objects of the litigation. (*Id*. at p. 724 ["The court's proper focus in this context is not so much whether another type of distribution might be better, but whether the distribution, *as proposed*, is appropriately useful in fulfilling the purposes of the underlying cause of action."].)[3]

The standard of review that governs this case is abuse of discretion. (*Microsoft I-V, supra*, 135 Cal.App.4th at p. 723 ["Our task is limited to a review of the record to determine whether it discloses a clear abuse of discretion when the trial court's determination of fairness is challenged on appeal."].) Here, we can hardly say that charities which either (a) directly aid blind people or (b) provide poor kids with eye exams and glasses are too remote or inconsistent with the basic object of the litigation to constitute an abuse of discretion. The themes of eye care and blindness obviously predominate. The purpose of the litigation was to provide some sort of redress for consumers who ran some risk of eye damage or actual blindness from the product. Such a nexus certainly compares favorably to *Microsoft I-V's* approval of vouchers for low-income public school students in what had started as essentially an anti-trust suit and the general legislative goal of promoting justice in cy pres distributions. (See *id.* at p. 727

"(b) Except as provided in subdivision (c), prior to the entry of any judgment in a class action established pursuant to Section 382, the court shall determine the total amount that will be payable to all class members, if all class members are paid the amount to which they are entitled pursuant to the judgment. The court shall also set a date when the parties shall report to the court the total amount that was actually paid to the class members. After the report is received, the court shall amend the judgment to direct the defendant to pay the sum of the unpaid residue, plus interest on that sum at the legal rate of interest from the date of entry of the initial judgment, *to nonprofit organizations or foundations to support projects that will benefit the class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action*, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent. The court shall ensure that the distribution of any unpaid residual derived from multistate or national cases brought under California law shall provide substantial or commensurate benefit to California consumers." (Italics added.)

[3] We pause to note that it is well known that California's case law and statute governing cy pres funds is more liberal than the approach of the Ninth Circuit. (See Tsai and Harlow, *Cy Pres: The Next Best Thing – Or Not* (Oct. 2013) California Lawyer pp. 35, 36-38 [asserting result in *Microsoft I-V* of approving cy pres fund to provide vouchers to low-income public school students would not have been the same in Ninth Circuit]; cf. *Six (6) Mexican Workers v. Ariz. Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1308 ["The district court's proposal benefits a group far too remote from the plaintiff class. . . . The district court's plan permits distribution to areas where the class members may live, but there is no reasonable certainty that any member will be benefited."].)

4

["The fact that the compensatory effect for class members was *indirect*, as compared with the more direct benefit to low-income students having little correlation with the plaintiff class, does not alter this conclusion."].)

Likewise Hale's challenge to the attorney fee award is governed by an abuse of discretion standard. (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1118 ["Trial court orders approving class action settlements and awarding attorney fees are reviewed for abuse of discretion."].) Again, we cannot say the trial court's determination of $750,000 in class counsel fees was so high as to be unreasonable.

The four "*Ketchum* factors" are all present: (1) novelty and difficulty of the case, (2) the necessity of a high level of skill; (3) the preclusion of other employment, and (4) the contingent nature of any fee recovery. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Taking the *Ketchum* factors in reverse order, we note the contingent nature of the litigation is a given. Further, the record shows class counsel spent over 6,000 hours on the case, hence preclusion of other employment is also shown. And the case involved both the need for skill and novel questions, given the scientific nature of the issues and the statistical correlation between any defect in the product and injury.[4] Most telling is this: 6,000 hours for $750,000 works out to an average $125 an hour, which, for better or worse in early 21st century California, is way below the prevailing market rate for most lawyers, even rookies. (Cf. *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009 [$450 upheld for attorney of 15 years of experience in mortgage litigation in Richmond, California]; *Cordero-Sacks v. Housing Authority of City of Los Angeles* (2011) 200 Cal.App.4th 1267, 1286 [$450 upheld in retaliation suit in Los Angeles]; *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260 [upholding $350 an hour in San Francisco rent control litigation]; *Graciano v. Robinson Ford Sales, Inc.*

---

[4] Consider for example the issue of whether Acanthamoeba can afflict contact lens wearers who are simply sloppy in the way they store, clean and insert their contact lenses, regardless of the effect of even the best solution.

(2006) 144 Cal.App.4th 140, 156 [$250 an hour held too low in litigation against auto dealer in Imperial County in mid-2000's].)

That leaves us with the request of both class counsel and AMO to impose sanctions against Ms. Hale for frivolous appeal. That's a matter on which *we* have discretion. (See *Winick Corp. v. County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1181-1182.) In light of the "no reasonable attorney" standard laid down in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, we decline to impose sanctions.

"Sanctions are serious business. They deserve more thought than the choice of a salad dressing. 'I'll have the sanctions, please. No, on second thought, bring me the balsamic; I'm trying to lose a few pounds.' . . ." (See *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 293.) Here, we cannot say that Hale's appeal was so unreasonable that "no reasonable attorney could have thought it meritorious." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.)

Both of Hale's arguments have something going for them. The choice of Children's Vision First as a beneficiary for the cy pres fund, for example, meant settlement money would be going to people who did not, *by definition*, buy the product – children whose parents can't afford eye exams are not going to be consumers of contact lens solution prior to any exam. And the $750,000 award, though reasonable given the ultimate result of a $125 an hour return, might be considered a tad high given that it means a recovery for the attorneys in excess of the total payout to the class. The trial court here thus did a pretty good job of splitting the difference and coming up with a reasonable attorney fee award.

So we affirm the judgment, but deny the motion for sanctions.  Each side will bear its own costs on appeal.



BEDSWORTH, J.

WE CONCUR:



RYLAARSDAM, ACTING P. J.



FYBEL, J.