[No. G038314. Fourth Dist., Div. Three. Aug. 22, 2008.]

RONALD H. MARK, Plaintiff and Appellant, v.
JEFFREY P. SPENCER, Defendant and Respondent.

COUNSEL

William J. Kopeny & Associates and William J. Kopeny for Plaintiff and Appellant.

Lakeshore Law Center and Jeffrey N. Wilens for Defendant and Respondent.

OPINION

ARONSON, J.—Plaintiff Ronald H. Mark appeals from a judgment of dismissal entered after the trial court sustained a demurrer to his first amended complaint without leave to amend. The complaint sought enforcement of an agreement between Mark and defendant Jeffrey P. Spencer to divide fees awarded to them as cocounsel representing the plaintiffs in an earlier class action lawsuit. Mark contends his failure to disclose the fee-splitting agreement to the court in the class action, as required by California Rules of Court, rule 3.769,[1] did not preclude him from bringing a separate action to enforce the agreement.

We conclude the trial court did not err in sustaining the demurrer without leave to amend. Rule 3.769 was designed to protect class members from potential conflicts of interest with their attorneys by requiring the full disclosure of all fee agreements in any application for dismissal or settlement of a class action. Rule 3.769 would be effectively nullified if attorneys could conceal a fee-splitting agreement from the court in seeking approval of a class action settlement and later enforce the agreement in a separate action.

As a separate and independent basis for upholding the trial court's action, we conclude Mark's claims are barred by res judicata. Mark was provided a fair opportunity to litigate the fee-splitting agreement before the court in the class action. Because the class action court fully and finally determined the attorneys' respective entitlement to fees, Mark may not relitigate the issue here. We therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

In fall 2001, Matt Capelouto contacted Mark to discuss filing a lawsuit against Capelouto's former employer, General Nutrition Corporation (GNC).

---

[1] All rule references are to the California Rules of Court unless otherwise noted.

After investigation, Mark concluded Capelouto could serve as the lead plaintiff in a class action against GNC. During the course of his investigation, Mark approached Spencer about joining him as counsel in the proposed litigation. Mark and Spencer entered into a written agreement to act as cocounsel in the proposed class action, which provided: (a) Mark and Spencer would evenly split any attorney fees generated in the action; (b) the 50-50 split shall "be in effect even if counsel are required to submit fee applications individually"; (c) in the event "either attorney or firm fails to perform their reasonable share of the joint representation," the parties "shall renegotiate the fee split set forth above"; (d) Mark and Spencer "will both have equal duties and responsibilities in the litigation"; and (e) their respective firms would split the costs evenly.

In November 2001, Mark and Spencer filed a complaint seeking class certification, commencing the action *Capelouto v. General Nutrition Corp.* (Super. Ct. Orange County, 2004, No. 01CC00138). After mediation, the *Capelouto* action settled, and in July 2004, the parties entered into a written settlement agreement. In August 2004, the court in the *Capelouto* action granted preliminary approval of the class settlement. In December 2004, Spencer drafted and filed a motion seeking final approval of the class action settlement and an application requesting the court to award "Class Counsel" a $600,000 lump sum for attorney fees and expenses. Mark and Spencer submitted separate declarations in support of the fee application. None of the papers filed mentioned the fee-splitting agreement. Spencer appeared at the hearing on the attorney fee application, but failed to notify the court of the agreement. Mark did not appear at the hearing, and did not notify the court of the agreement.

On December 20, 2004, the trial court in the *Capelouto* action entered an order approving attorney fees in the amount of $401,275.43 to Spencer and $76,470 to Mark, to be paid within 30 days. On January 4, 2005, the class action defendant wire-transferred $401,275.43 to Spencer, and $76,470 to Mark. Mark then asked Spencer to honor the fee-splitting agreement by transferring enough money to make their receipt of fees equal. Spencer refused, claiming that Mark was entitled only to the $76,470 the court awarded him.

In July 2006, Mark filed the present action against Spencer. After the trial court sustained a demurrer with leave to amend, Mark filed his first amended complaint for breach of contract, money had and received, and conversion. The trial court sustained a demurrer to each cause of action, this time without

leave to amend, reasoning: "[R]es judicata, based on issue preclusion, is applicable since plaintiff cannot plead compliance with California Rules of Court, Rule 1859(b).[2] *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1056 [2 Cal.Rptr.3d 358], citing *Rebney [v.] Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1142–1143 [269 Cal.Rptr. 844]. The court in the *Capelouto* matter already determined the award of attorney's fees, and it is not subject to collateral attack based on plaintiff's agreement with defendant which was not submitted to the *Capelouto* trial court as required under Rule 1859(b)." The court entered judgment in Spencer's favor, and Mark now appeals.

## II

### DISCUSSION

A. *Mark's Failure to Disclose the Fee-splitting Agreement in the* Capelouto *Action Bars Its Enforcement Here*

■ As Mark recognizes, fee-splitting agreements create a potential conflict of interest between the client and the attorneys. One potential conflict concerns the amount of fees charged to the client. For example, a fee-splitting agreement, like the one here, which contemplates the attorneys will "perform their reasonable share of the joint representation," and "have equal duties and responsibilities in the litigation" might prompt the attorney who performed less work on the case to pad the bills to create the appearance he or she had performed the requisite share of the work.

A second potential conflict concerns the attorneys' tactical decisions in the litigation. For example, if one attorney subject to an agreement to split fees equally discovers he or she is spending far more time on the case than cocounsel, the attorney may push for an early settlement to stem the losses. Conversely, an attorney spending less time on the case may wish to drag the litigation out, knowing he or she will eventually recover fees disproportionately larger than those actually earned.

In recognition of such conflicts, Rules of Professional Conduct, rule 2-200(A) provides, in relevant part: "A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: [¶] (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and [¶] (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200."

---

[2] Rule 1859(b) has since been renumbered rule 3.769(b) without material change.

"[Rules of Professional Conduct], rule 2-200 aims to protect clients by requiring, inter alia, the attorney's written disclosure and the client's written consent to nonexempt fee divisions." (*Chambers v. Kay* (2002) 29 Cal.4th 142, 162 [126 Cal.Rptr.2d 536, 56 P.3d 645] (*Chambers*).) " 'Just as a client has a right to know how his or her attorney's fees will be determined, he or she also has a right to know the extent of, and the basis for, the sharing of such fees by attorneys. Knowledge of these matters helps assure the client that he or she will not be charged unwarranted fees just so that the attorney who actually provides the client with representation on the legal matter has "sufficient compensation" to be able to share fees with the referring attorney. . . .' [Citation.]" (*Id.* at pp. 156–157.)

In *Chambers*, the Supreme Court considered whether a party to an undisclosed fee-splitting agreement could later enforce the contract. There, two attorneys entered into a fee-sharing agreement to act a cocounsel in a sexual harassment case. Under the agreement, lead counsel agreed to pay the other attorney one-sixth of the 40 percent contingency fee called for in the retainer agreement with the client. (*Chambers, supra*, 29 Cal.4th at p. 147.) In violation of Rules of Professional Conduct, rule 2-200, the attorneys never obtained the client's approval of the fee-sharing agreement. During discovery in the sexual harassment case, the lead counsel fired his cocounsel, but reaffirmed the fee-sharing agreement. After the jury in the sexual harassment case awarded the client substantial compensatory and punitive damages, the lead counsel refused to honor the agreement. (29 Cal.4th at pp. 146–147.)

█ The discharged attorney sued in a separate action to enforce the agreement. The Supreme Court affirmed summary judgment for the defendant on the breach of contract claim because the attorneys failed to obtain their client's approval of the fee-splitting agreement. Although Rules of Professional Conduct, rule 2-200 does not specify any penalty for its violation, the court determined that allowing an attorney to enforce a fee-splitting agreement obtained without the client's consent "would, in effect, be both countenancing and contributing to a violation of a rule we formally approved in order 'to protect the public and to promote respect and confidence in the legal profession.' [Citations.] Such a result would be untenable as well as inconsistent with the policy considerations that motivated the adoption of rule 2-200." (*Chambers, supra*, 29 Cal.4th at p. 158.) The court rejected the plaintiff's argument the trial court should have prevented the defendant from invoking his own violation of Rules of Professional Conduct, rule 2-200 as a defense, finding the plaintiff's own neglect of the rule "equally disturbing."

(29 Cal.4th at p. 162.) The court recognized the plaintiff could have taken steps to both protect his interests and fulfill the purposes of the rule. (*Id.* at pp. 162–163.)

■ Mark asserts the trial court should have enforced his fee-splitting agreement with Spencer because he complied with Rules of Professional Conduct, rule 2-200. But the present situation involved the attorneys' representation of absent class members in settlement negotiations, which creates an increased potential for a conflict of interest. As one court observed: " '[W]henever an attorney is confronted with a potential for choosing between actions which may benefit himself financially and an action which may benefit the class which he represents there is a reasonable possibility that some specifically identifiable impropriety will occur.' [Citation.] The concern is not necessarily in isolating instances of major abuse, but rather is 'for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests.' [Citation.] Such conflicts are not only difficult to discern from the terms of a particular settlement, but 'even the parties may not be aware that [they exist] at the time of their [settlement] discussions' [citation]. *This risk is magnified in the class action context, where full disclosure and consent are many times difficult and frequently impractical to obtain.*" (*In re Agent Orange Product Liability Litigation* (2d Cir. 1987) 818 F.2d 216, 224, italics added.)[3]

■ Because absent class members are not directly involved in the proceedings, oversight to ensure settlements are fair and untainted by conflict is the responsibility of both the class representative *and the court.* "Both levels of scrutiny are necessary to protect the interests of the putative class." (*Apple Computer, supra,* 126 Cal.App.4th at p. 1272.) To fulfill its role in protecting absent class members, the class action court must consider the potential effect of a fee-splitting agreement *before* approving a proposed settlement. Evaluating the substance of the settlement separate from the attorney fees is insufficient. The court in *Rebney v. Wells Fargo Bank, supra,* 220 Cal.App.3d 1117 (*Rebney*) emphasized this precise point: "A finding that the settlement was fair is not dispositive of the attorney fees issue. 'The test to be applied is whether, at the time a fee sharing agreement is reached, class counsel are placed in a position that might endanger the fair representation of their clients and whether they will be compensated on some basis other than for legal services performed.' [Citation.] To make the fairness of the settlement the test would encourage concealment of the agreement until after the settlement." (*Id.* at p. 1143, fn. 8.)

---

[3] " 'California courts may look to federal authority for guidance on matters involving class action procedures.' [Citations.]" (*Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1264, fn. 4 [24 Cal.Rptr.3d 818] (*Apple Computer*).)

*Rebney*'s requirement that lawyers disclose their fee-sharing agreements to the court in connection with their request for approval of a proposed class action settlement was later incorporated into rule 3.769(b), which provides: "Any agreement, express or implied, that has been entered into with respect to the payment of attorney's fees or the submission of an application for the approval of attorney's fees must be set forth in full in any application for approval of the dismissal or settlement of an action that has been certified as a class action."

Mark recognizes rule 3.769(b)'s purpose is to protect class members from a potential conflict of interest with their attorneys. But Mark argues that even if class members in the *Capelouto* action were adversely affected by a conflict arising from the fee-splitting agreement, this fact should have no effect on the agreement's enforceability. In essence, Mark urges us to sanction the concealment of material information from the class action court, even if it harms the absent class members. The integrity of the judicial system demands we not do so.

■ Because an existing fee-splitting agreement could affect a class action court's decision whether to approve a proposed settlement, attorneys would have little incentive to disclose the agreement if they could simply enforce it in a separate action. To avoid encouraging the violation of rule 3.769(b), and the potential harm to class members from undisclosed conflicts, we apply the same prophylactic rule the Supreme Court applied for violations of Rules of Professional Conduct, rule 2-200, and hold that the parties' failure to fully disclose the fee-splitting agreement to the *Capelouto* court when they petitioned for approval of the class action settlement bars later enforcement of the agreement.[4]

■ We reject Mark's proffered excuse that he did not know he was required to bring the fee-splitting agreement to the attention of the *Capelouto* court, and that he relied on Spencer, who held himself out as a class action

---

[4] In his petition for rehearing, Mark asserts he is entitled to rehearing under Government Code section 68081 because he had no prior notice of, or opportunity to address in briefing, our analysis drawing an analogy between rule 3.769(a) and Rules of Professional Conduct, rule 2-200, as the Supreme Court interpreted it in *Chambers, supra*, 29 Cal.4th 142. We disagree. Government Code section 68081 requires rehearing when an appellate court "renders a decision in a proceeding . . . based upon an issue which was not proposed or briefed by any party to the proceeding . . . ." The issue we decide here, whether a plaintiff's failure to comply with rule 3.769(a) bars later enforcement of a fee-sharing agreement, was fully briefed by the parties. The parties do not "have a right under section 68081 to submit supplemental briefs or be granted a rehearing each time an appellate court relies upon authority or employs a mode of analysis that was not briefed by the parties. The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of section 68081." (*People v. Alice* (2007) 41 Cal.4th 668, 679 [61 Cal.Rptr.3d 648, 161 P.3d 163].)

expert. Courts do not excuse nonlawyers for their ignorance of the law. (*Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481, 1506 [79 Cal.Rptr.2d 879].) We see no reason to carve out an exception for attorneys.

We recognize our decision today means that Spencer may have benefitted from his violation of rule 3.769(b); but Mark, as an attorney appearing in the *Capelouto* action, also violated rule 3.769(b). We are not persuaded to protect Mark's interest in the fee-splitting agreement at the potential expense of the *Capelouto* class members.

B. *Mark's Claims Are Barred by the Doctrine of Res Judicata*

As a separate and independent basis for affirming the trial court's decision, we conclude Mark's claims are barred by the doctrine of res judicata. Contesting this conclusion, Mark notes the trial court in the *Capelouto* action never considered the fee-splitting agreement, and contends the parties' rights under the agreement represent an issue separate from the *Capelouto* fee award. We disagree, for two reasons.

First, " '[t]he doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, *or had an opportunity* to litigate the same matter in a former action in a court of competent jurisdiction . . . .' " (*Roos v. Red* (2005) 130 Cal.App.4th 870, 879 [30 Cal.Rptr.3d 446], italics added.) As one court noted in the attorney fee context, "the law is clear that *actual litigation* is not necessary as long as there has been 'a fair opportunity' to litigate the claim." (*Law Offices of Stanley J. Bell v. Shine* (1995) 36 Cal.App.4th 1011, 1026 [43 Cal.Rptr.2d 717], original italics.) Although the fee-splitting agreement was not considered by the *Capelouto* court, Mark has alleged no facts demonstrating that he lacked "a fair opportunity" to bring the fee-splitting agreement to the court's attention when it considered the attorney fee requests. As noted above, Mark's ignorance of rule 3.769(b) provides no excuse for his failure to comply with its requirements.

Second, the fee-splitting agreement is not an issue separate from the matters considered by the *Capelouto* court when it made its attorney fee award. Specifically, courts may not rely solely on a fee distribution agreement to allocate fees between class counsel. Instead, "an award of attorney fees in class action litigation must be tied to counsel's actual efforts to benefit the class." (*Rebney, supra,* 220 Cal.App.3d at p. 1142.) True, fee distribution agreements between counsel need not " 'follow, line by line, the lodestar formula in arriving at an agreement as to fee distribution.' " (*Ibid.*) But " 'the distribution of fees must bear *some relationship to the services rendered.*' " (*Id.* at p. 1143, original italics.)

*In re Vitamin Cases, supra,* 110 Cal.App.4th 1041, illustrates this point. There, the appellate court reversed a class counsel fee award in part because the trial court failed to consider a term in the settlement agreement providing that "each plaintiff's counsel's 'share of the overall fee award . . . [shall] be determined by the [liaison counsel] in consultation with the Plaintiffs' Executive Committee . . . .' " (*Id.* at p. 1056, fn. 10.) The court explained: "To be sure, one case has suggested that, in some situations, it might be appropriate to distribute fees in a manner that varies from the way in which the fees were calculated. [Citation.] However, here, the fact that co-liaison counsel intends to distribute the attorney fees award to the law firms in a manner independent of the loadstar underscores the very concerns we have regarding the value of the services of all of the attorneys and law firms who were involved in these actions. These issues should be resolved by the trial court *before* an award of attorney fees, rather than by co-liaison counsel *afterwards.*" (*Id.* at p. 1056, original italics.) Accordingly, a court may not base its allocation of attorney fees between Mark and Spencer solely on the fee-splitting agreement, but must fully consider the attorneys' actual efforts to benefit the class members.

The relative entitlement of Mark and Spencer to attorney fees was fully considered and finally determined by the court in the *Capelouto* action. For example, at the hearing on the fee petition, the court noted to Spencer: "I felt Mr. Mark's records were somewhat short of the mark, and I concluded that perhaps his work on the case was not as significant or valuable as yours and that some of the work that he did on the case might not justify that portion of the claim. [¶] I had [little] or virtually no concern about your claim in terms of the hours and the work. In fact, I think this was a good result on a difficult case. [¶] But I do have that concern, and I think it would be reflective when I finally put the final touch on this as a concern for Mr. Mark's records and Mr. Mark's work on the case and also the justification for these enhancements." Based on the court's consideration of the attorneys' respective declarations and its own observations of their efforts in the case, it concluded Spencer was entitled to $401,275.43 and Mark was entitled to $76,470.

■ "[R]es judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, *even when those issues bear on different claims raised in a later case.*" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229], second italics added.) Because the trial court in the *Capelouto* action fully and finally determined the attorneys' respective entitlement to attorney fees, the court in the present action correctly concluded the doctrine of res judicata barred Mark's first amended complaint.

## III

### Disposition

The judgment is affirmed. Spencer is entitled to his costs of this appeal.

Sills, P. J., and Fybel, J., concurred.

A petition for a rehearing was denied September 17, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167206.