Filed 11/6/13  Kalfin v. Kalfin CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBRA R. KALFIN,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JUDITH A. KALFIN,<br><br>     Defendant and Appellant. | G046639<br><br>(Super. Ct. No. 30-2010-00422625)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on October 15, 2013, be modified as follows:

On page 30, add the following:

"V.  *Attorney Fees on Appeal*

"Debra requests her reasonable appellate attorney fees and costs under Welfare and Institutions Code section 15657.5, subdivision (a).  As we noted in the concurrently filed companion appeal *Debra R. Kalfin v. Judith A. Kalfin* (Oct. 15, 2013, G047275) [nonpub. opn.], as prevailing party Debra is entitled to an award of costs and attorney fees incurred on appeal, which includes the costs and fees incurred in defending

the judgment and the attorney fees award, in an amount to be determined by the trial court.  (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499 ['statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise']; *Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1388 [party who successfully defends an award of attorney fees is entitled to appellate attorney fees as well].)"

On page 30, modify the final sentence of the disposition to read, "Respondent is awarded her costs and attorney fees on appeal."

This modification does not change the judgment.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBRA R. KALFIN, | |
| Plaintiff and Respondent, | G047275 |
| v. | (Super. Ct. No. 30-2010-00422625) |
| JUDITH A. KALFIN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, H. Michael Brenner, Judge. (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed as modified.

Freeman Firm, Thomas H. Keeling, Franklin J. Brummett; Law Offices of Scott E. Schutzman and Scott E. Schutzman for Defendant and Appellant.

Lamb & Kawakami, Patrick L Rendon; Adams & Nelson and Keith A. Robinson for Plaintiff and Respondent.

Judith A. Kalfin appeals from the postjudgment order awarding attorney fees to her sister, Debra R. Kalfin.[1]  In the underlying action, Debra prevailed on her claim for financial abuse of a dependent adult, which entitled her to attorney fees. (Welf. & Inst. Code, §§ 15610.30, 15657.5, subd. (a).)  On appeal, Judith does not challenge Debra's statutory entitlement to attorney fees, but argues the order must be reversed because:  (1) the award is excessive and the court applied improper criteria; (2) amounts awarded based on work by one group of Debra's attorneys should have been stricken because there was an illegal fee-splitting agreement between Debra's attorneys; and (3) the contingent fee agreement between Debra and her attorneys was unconscionable.  We reject her contentions, modify the award to delete minor amounts Debra concedes should not have been awarded, and affirm the order as modified.

FACTS & PROCEDURE

The facts concerning the underlying dispute are fully addressed in our concurrently filed opinion in *Debra R. Kalfin v. Judith A. Kalfin* (Oct. 15, 2013, G046639) [nonpub. opn.] (*Kalfin 1*).  We adopt and incorporate by reference the facts and analysis from our opinion in *Kalfin 1* and will not repeat them here.  In that opinion, we affirmed the judgment awarding Debra approximately $1.4 million in compensatory damages and $260,000 in punitive damages against Judith on causes of action for breach of oral contract and financial abuse in violation of Welfare and Institutions Code section 15610.30.

*Debra's Motion for Attorney Fees*

Debra filed a motion for her attorney fees pursuant to Welfare and Institutions Code section 15657.5, subdivision (a), which provides a plaintiff who

---

[1]    For convenience and clarity, we will refer to the family members by their first names, with no disrespect intended.

2

prevails on a claim for financial abuse under Welfare and Institutions Code section 15610.30, "shall [be] award[ed her] reasonable attorney's fees . . . ." Her motion was accompanied by a declaration from her lead attorney, Patrick L. Rendon, who detailed the claimed "lodestar" amount, i.e., the hours reasonably spent on the litigation multiplied by a reasonable hourly rate.

Rendon's declaration explained Debra agreed to hourly rates of $600 for partners, $450 for associate attorneys, and $250 for paralegals. He stated, "Pursuant to the terms of the engagement with [Debra, she] agreed that we are entitled to [50] percent of the gross amount recovered plus costs." Rendon declared because they recognized attorney fees were potentially recoverable, "we agreed to accept the [court's] award of attorneys' fees . . . in lieu of the amount due by applying the [50 percent] contingency but only if the . . . award . . . exceeds the amount due by applying the [50 percent] contingency." Rendon explained Debra's ability to pay any attorney fees otherwise was doubtful in view of her disability and lack of any source of income beyond her $1,200 a month in combined social security and disability insurance payments.

Rendon detailed the experience of the attorneys and paralegals who worked on the litigation. Some of the attorneys and paralegals were employed by Rendon's firm, Lamb & Kawakami, but others including attorney Keith A. Robinson were employed by Robinson's firm, Adams & Nelson.

Rendon's declaration attached a 24-page invoice from Lamb & Kawakami submitted to Debra shortly before her attorney fees motion was filed detailing the time spent and charges of each attorney and paralegal who worked on the matter. The invoice also detailed litigation costs advanced by Rendon's firm totaling $82,251.88. In sum, Rendon himself spent 1,027.75 hours on the litigation at $600 an hour; Robinson spent 199.05 hours at $600 an hour; five other attorneys from the two law firms collectively spent 267.3 hours at rates ranging from $450 to $600 an hour; and four paralegals from the two law firms spent 117.25 hours at $250 an hour. A total of 1,611.35 hours were

claimed for a total lodestar amount of $893,465.  Rendon urged the court to apply a multiplier of four to the lodestar amount because of the complexity of the litigation.

*Judith's Opposition*

Judith opposed the attorney fees motion, arguing the amounts claimed were excessive, although the only item specifically identified in her opposition was a charge of 14.75 hours of Rendon's time for trial of the partition action, in which Debra did not prevail.  Judith asserted the 50 percent contingency fee agreement was unconscionable and not enforceable because not only was 50 percent too much, but the retainer agreement described by Rendon permitted him to keep 50 percent of the jury verdict *plus* whatever attorney fees award the court made.

Judith also argued Debra should not be allowed to recover fees for work performed by attorneys employed by Robinson's law firm.  She argued the arrangement constituted fee-splitting, which was illegal pursuant to Rules of Professional Conduct, rule 2-200 (rule 2-200) unless specifically consented to in writing by the client.

Judith's opposition included a declaration from her attorney, Scott E. Schutzman, stating that in his opinion, a 50 percent contingency fee was unconscionable, and Rendon and the other attorneys had an illegal fee-splitting arrangement.  Schutzman declared that based on "a quick review" of the invoice the hours claimed by attorney Rendon were excessive and inflated, but he gave only three examples:  7.5 hours billed January 14, 2011, for reviewing a tentative ruling and attending a hearing, 12 hours billed for preparing for and attending Marjorie Solomon's deposition on February 7, 2011, and the 14.75 hours billed for attending trial in the partition action.  Schutzman declared his total bills to Judith for her defense in this matter were "well under $200,000" and that was the maximum that should be awarded.

*Debra's Reply*

In her reply, Debra conceded the 14.75 hours for trial in the partition action should be omitted from her request.  Rendon submitted an additional declaration

4

providing more detail regarding his billings, including the two items Judith specifically raised in her opposition (i.e., the 7.5- and 12-hour charges).

Debra submitted her own declaration concerning the tremendous difficulty she had finding an attorney to take her case. She contacted eight or nine other attorneys (most found through bar association referrals and a few referred by friends). Most would not return her calls, but those who did were not interested in taking the case or wanted large retainers, which she could not afford. Rendon was the only attorney she found who would take her case on a contingency basis and who would advance costs. Debra declared, "Rendon informed me of the fact that . . . Robinson and the other attorneys at [Robinson's firm] would be working on this case[.] I approved of this in writing and continue to approve of this."

At the hearing on the attorney fees motion, Rendon represented to the court his retainer agreement with Debra did not permit him to keep the 50 percent contingent fee *plus* the attorney fees award as suggested by Judith. The retainer agreement was that if the attorney fees award exceeded 50 percent of the jury's verdict, Rendon got the attorney fees award and waived the contingent fee. If the award was less than 50 percent of the jury's verdict, he got the 50 percent contingent fee, and Debra got to keep the attorney fees that were awarded. "We don't get both. And I want to be very clear about that. . . . We get one or the other, but we don't get both."

*Ruling*

On June 12, 2012, the trial court granted Debra's attorney fees motion awarding her a total of $700,000 in attorney fees. The court found the attorneys' hourly billing rates were "a little high," and set Rendon's billing rate at $500 an hour and Robinson's at $400. It awarded the fees as follows: $520,000 for Rendon's services; $80,000 for Robinson's services; and $100,000 for the services of all other attorneys and paralegals. The court declined to utilize a multiplier. The court stated it did not find the 50 percent contingent fee agreement unconscionable under the circumstances of the case.

5

DISCUSSION

1.  *Reasonableness of Attorney Fees*

As the prevailing plaintiff in a financial abuse case Debra was statutorily entitled to recover her reasonable attorney fees.  (Welf. & Inst. Code, § 15657.5, subd. (a).)  Judith does not contest Debra's entitlement to her attorney fees, but contends the attorney fees awarded were excessive and the trial court relied on improper criteria in fashioning the award.  We reject her contentions.

An attorney fees award is reviewed for abuse of discretion.  (*Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 233.)  Abuse of discretion will be found only when it is shown there was no reasonable basis for the trial court's action.  (*Ibid*.)  "'[T]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.'  [Citation.]"  (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785.)  "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion."  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

The trial court is not required to issue a statement of decision addressing disputed legal and factual issues when ruling on a motion for attorney fees.  (*Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1348-1349.)  "No specific findings reflecting the court's calculations [are] required.  [Citation.]  'The record need only show that the attorney fees were awarded according to the "lodestar" or "touchstone" approach.'  [Citation.]  On appeal we infer all findings in favor of the prevailing parties.  [Citation.]"  (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254.)

"[T]he lodestar method requires the trial court to first determine a touchstone or lodestar figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney.  [Citations.]  The trial court may then

6

augment or diminish the touchstone figure by taking various relevant factors into account. [Citations.]" (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 445-446; see *Serrano v. Priest* (1977) 20 Cal.3d 25, 48.)

The record reflects the trial court engaged in the appropriate lodestar method in fashioning the attorney fees award. Debra's motion was accompanied by a declaration from attorney Rendon and invoices detailing the number of hours expended by each attorney and paralegal who worked on this case, the experience of each, and the billing rate of each. The moving papers demonstrated 1,611.35 hours were spent at hourly rates ranging from $250 for paralegals to $600 for partners, for a total lodestar amount of $893,465. The trial court believed the hourly billing rates of the attorneys were too high and reduced the hourly compensation of Debra's primary attorneys, Rendon and Robinson, to $500 and $400 respectively, and concluded reasonable attorney fees for their time was $520,000 and $80,000. It found a reasonable fee for the services of all other attorneys and paralegals who worked on the litigation was $100,000.[2]

Judith contends the attorney fees award must be reversed because the trial court did not "carefully review" the time Debra's attorneys spent on the case, as evidence by its comment when ruling that "[t]hese fee bills are always somewhat difficult for the [c]ourt because there's no way to really examine the amount of time spent." Judith gloms on to this comment characterizing it as an admission by the trial court that it never looked at or assessed the reasonableness of the claimed hours and instead just picked a figure out of thin air that was only "slightly less than Debra's request" and then worked backward to justify the number by whittling down the billing rate to achieve its desired result.

---

[2] In passing Judith asserts the court's failure to specify the hourly rate for each of these attorneys and paralegals requires reversal. The argument is devoid of any reasoned legal analysis or citation to authorities. Accordingly, we consider the point waived. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [when appellant raises issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [same].)

There is nothing in the record that support's Judith's contention the court did not carefully examine the moving papers and the claimed hours spent on the case. The court's remark was nothing more than a comment on the difficulty of the task before it. Its final award of $700,000, represented a significant 22 percent reduction from the claimed fees. Judith also makes much of the fact the amount the court awarded attributable to Rendon's work, $520,000, was based on its finding $500 an hour was a reasonable billing fee, which means the court compensated Rendon for 1,040 hours, when his times sheets claimed only 1,027.75, hours. We cannot say this minor discrepancy of 12.25 hours demonstrates the trial court misunderstood or abdicated its responsibilities.[3]

Judith also contends the trial judge ignored duplicative billings, billings with "vague description[s]," and billings done in quarter hour increments. Not only does Judith not provide adequate citations to the record for her claims, citing non-existent pages in the clerk's transcript, but none of these items were challenged below. "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. Failure to raise specific challenges in the trial court forfeits the claim on appeal." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.) Moreover, we

---

[3] In her respondent's brief, Debra agrees the attorney fees award should be reduced to reflect the correct hours claimed by Rendon, 1027.75, i.e., the award should be reduced by $6,125 (12.25 x $500). We also note that at the hearing below, Debra conceded the 1027.75 hours, should be reduced by the 14.75 hours attributable to the partition action trial (another $7,375), but it does not appear the trial court made this adjustment and we will do so on appeal. Accordingly, we will modify the award to reflect Rendon's total hours of 1,013 at the reasonable hourly rate set by the trial court of $500, for a total award based on Rendon's work of $506,500, and a final attorney fees award of $686,500.

cannot say the trial court abused its discretion by finding the total hours claimed by all attorneys were reasonable. We are very familiar with the underlying litigation. The original complaint was filed in November 2010. It was aggressively litigated by Judith and Debra. Judith filed several pre-trial motions, including motions to compel arbitration and for summary judgment. Debra had to file several motions to compel discovery from Judith. The matter went to a jury trial lasting 10 days, followed by posttrial motions filed by Judith including a motion for judgment notwithstanding the verdict and a motion for new trial. Judith has not shown the trial court abused its discretion in determining the amount of reasonable attorney fees.

Finally, Judith argues the trial court improperly utilized the attorney fees award as a way to "further compensate Debra." She argues that rather than simply decide what constituted Debra's reasonable attorney fees, the court used the attorney fees award to get more money back to Debra from the 50 percent contingency fee she had to pay her attorneys so as to increase her ultimate recovery. She cites comments the court made while trying to clarifying with Rendon how the contingent fee agreement worked. The following colloquy took place:

"The Court: So whatever I -- so what you're saying is you're in for 50 percent of the verdict. I can decide how much of it I want Judy to have to pay Debby.

"Mr. Rendon: Yes.

"The Court: That's it, essentially.

"Mr. Rendon: Yes

"The Court: But I mean, even that's kind of odd. Because I might want to say, well, I've got a feeling for what the attorney[] fees are worth, but I don't know, poor Debby, I can in a sense award her more money by -

"Mr. Rendon: Well, I think -

9

"The Court: -- Giving -- I can shift it. Maybe what I'll do is I'll just shift some more from Judy to Debby, up the attorney[] fee[s] award. [¶] Do you see what I'm saying?

"Mr. Rendon: I hear what you're saying, your honor. I just think you -- I mean, I agree, it's an unpleasant position to be in."

Citing *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 373, in which the court observed "a *losing* party's financial condition should not be considered in the setting the amount of [an award of contractual attorney fees]" (italics added), Judith argues it was improper for the court to take into consideration its sympathy for Debra in fashioning the attorney fees award. The only proper consideration was what constituted reasonable attorney fees.

Judith reads too much into the court's comments. In their context, it is apparent the court was commenting on counsel's argument, not stating its plan for how it would calculate the fees. Judith has not carried her burden to show the attorney fees the court ultimately awarded to Debra—an almost 20 percent reduction in the fees she sought—were not reasonable.

*2. Fee-Splitting*

Judith argues an illegal fee-splitting agreement existed between Debra's primary attorney, Rendon, and his law firm, Lamb & Kawakami, and attorney Robinson and his law firm, Adams & Nelson. Therefore, Judith argues Debra is not entitled to recover attorney fees attributable to work done by Robinson or other Adams & Nelson attorneys and those fees should be stricken from Debra's attorney fees award.

Judith relies on rule 2-200, which provides, in relevant part: "A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: [¶] (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division . . . ." Judith asserts "[t]here is not the slightest

10

indication that [Debra] ever gave such [written] approval[,]" although Debra declared she approved *in writing* of Robinson and other attorneys from his law firm working on her case.

We need not decide whether rule 2-200 has been violated, as Judith has no standing to invoke it. As this court explained in *Mark v. Spencer* (2008) 166 Cal.App.4th 219, 225 (*Mark*), "fee-splitting agreements create a potential conflict of interest *between the client and the attorneys*" (italics added) and rule 2-200 exists to protect *the client* from potential conflicts arising from undisclosed fee-splitting arrangements. (See also *Strong v. Beydoun* (2008) 166 Cal.App.4th 1398, 1404 [rule 2-200 adopted for protection of client, who is consumer of attorney's legal expertise, "The consumer protection comes from the attorney's written disclosure and the client's written consent"].) To that end courts have routinely held *the attorney* may not enforce a fee-splitting agreement obtained without the client's consent against *the other attorney*. Indeed, all the cases cited by Judith in her brief involve such efforts. (*Chambers v. Kay* (2002) 29 Cal.4th 142, 162 [attorney could not enforce fee-splitting agreement with co-counsel]; *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172 [same]; *Mark, supra,* 166 Cal.App.4th 219 [same]; *Margolin v. Shemaria* (2000) 85 Cal.App.4th 891 [same].) Rule 2-200 is a disciplinary rule to protect the client from a conflict of interest between her attorneys. Judith offers no basis on which as Debra's losing opponent in litigation, she may raise a potential conflict between Debra and her attorneys to prevent Debra from recovering her attorney fees. (See *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 303 [a disciplinary rule "'does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.' [Citations.]"].)

*3. Contingent Fee Agreement*

Judith contends the 50 percent contingent fee agreement between Debra and her attorneys is unconscionable and violates rule 4-200(A) of the California Rules of

11

Professional Conduct, which provides, "A member [of the bar] shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee." Accordingly, she argues, the contingent fee agreement cannot stand and Debra is not entitled to an award of attorney fees based on the fee agreement.

We reject Judith's argument for the same reason as above—Judith has no standing to challenge the retainer agreement between Debra and her attorneys. The professional rule prohibiting an unconscionable fee is for the protection of *the client* and not to protect the client's opponent in litigation from an attorney fees award. Moreover, the fee award made in this case was not based on the contingent fee agreement. The trial court assessed attorney fees based on the reasonable hours spent in this litigation and a reasonable hourly rate. We also note, Judith's argument is based on a mischaracterization of what we have in the record concerning the contingent fee agreement. The actual retainer agreement is not before us. In his declaration, Rendon explained the agreement provided "we agreed to accept the [court's] award of attorneys' fees . . . in lieu of the amount due by applying the [50 percent] contingency but only if the . . . award . . . exceeds the amount due by applying the [50 percent] contingency." Judith argues this means if the court awarded attorney fees in an amount less than 50 percent of the jury verdict, Debra's attorneys could collect the contingent amount *plus* keep any attorney fees awarded by the trial court. But at the hearing on the attorney fees motion, Rendon was emphatic, "[W]e get one or the other, but we don't get both."

*4. Attorney Fees on Appeal*

Debra requests her reasonable attorney fees and costs on appeal. As prevailing party she is entitled to an award of costs and attorney fees incurred on appeal, which includes the costs and fees incurred in defending the judgment and the attorney fees award, in an amount to be determined by the trial court. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499 ["statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise"];

12

*Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1388 [party who successfully defends an award of attorney fees is entitled to appellate attorney fees as well].)

## DISPOSITION

The postjudgment order awarding attorney fees is modified to reduce the attorney fees award to $686,500, and as modified the order is affirmed.  Respondent is awarded her costs and attorney fees on appeal.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.