Filed 9/2/21  Gonzales v. St. Joseph's Heritage Health CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| OLIVIA F. GONZALES, | |
| Plaintiff and Appellant, | G059119 |
| v. | (Super. Ct. No. 30-2019-01107769) |
| ST. JOSEPH'S HERITAGE HEALTH, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Affirmed.

Olivia Gonzales, in pro. per., for Plaintiff and Appellant.

Davis Wright Tremaine, Camilo Echavarria and Vandana Kapur for Defendants and Respondents.

\*          \*          \*

## INTRODUCTION

This appeal arises from a judgment in favor of defendants St. Joseph's Heritage Healthcare (St. Joseph's) and its employees Ron Gonzalez and Shawn Coughlin (collectively defendants). The trial court sustained their demurrer against plaintiff Olivia Gonzales's complaint without leave to amend, based in part on the court's conclusion that Gonzales's causes of action were barred by claim preclusion. We affirm.

Gonzales signed a severance agreement ending her employment with St. Joseph's. Gonzales filed a total of three lawsuits related to the agreement and events occurring before and after she signed the agreement. Her second lawsuit was against the same defendants here and ended after the trial court granted defendants' special motion to strike all of its causes of action. This appeal relates to the third lawsuit filed by Gonzales. All of the acts alleged in the third lawsuit occurred before the filing of the second lawsuit.

We review the trial court's sustaining of the demurrer de novo and its denial of leave to amend for abuse of discretion. We conclude the court ruled correctly because claim preclusion bars Gonzales's claims in her third lawsuit and she has not shown how she could successfully amend her allegations to avoid claim preclusion.

## FACTS AND PROCEDURAL HISTORY

*A. Preagreement Events and the Severance Agreement*

Gonzales was employed by St. Joseph's during two separate time periods beginning in 2011. In 2014, Gonzales started working with a coworker who became involved in workplace disagreements with Gonzales. Ultimately, Gonzales's employment ended in November 2015 when she and St. Joseph's signed a contract entitled "Confidential Severance Agreement and General Release" (the severance agreement). Both parties broadly released each other and related parties from known and unknown "liabilities . . . and all other legal responsibilities" and agreed neither party

2

would "bring against the Released Parties any claim or action . . . which . . . relate[d] in any way to the Released Matters."

Also in the severance agreement, St. Joseph's promised to pay Gonzales a three-month severance and to limit its communication of information about Gonzales's departure to her future potential employers. According to Gonzales, included in the agreement was an understanding that "she would be terminated [but] with a promise of reinstatement." Although the agreement stated that Gonzales would not "apply for, seek, accept or maintain employment with" St. Joseph's, Gonzales handwrote, above her signature on the agreement's final page, two subsections stating: "I still would like to continue [an] appeal for reinstatement [and ¶] . . . I would return the money if I[ a]m reinstated."

### B. St. Joseph's Application For A Restraining Order Against Gonzales

Three months after the severance agreement was signed, St. Joseph's told Gonzales her reinstatement request was denied and her employment termination was final. Gonzales then e-mailed St. Joseph's and allegedly communicated with her former coworker's husband about the coworker. St. Joseph's filed a "Petition for Workplace Violence Restraining Orders" against Gonzales and supported it with a declaration by the coworker. At the petition hearing, the trial court stated that Gonzales "may have dodged a bullet" when it denied the petition because St. Joseph's had not satisfied the requirements of the specific statute its petition had been filed under.

### C. Gonzales's 2016 Lawsuit: The First Complaint

One week later, in March 2016, Gonzales filed, against her former coworker, a complaint (all iterations collectively referred to as the first complaint) alleging four causes of action, labeled: (1) "defamation of character," (2) "intentional infliction of emotional distress," (3) "negligent infliction of emotional distress," and

3

(4) "punitive damages."[1]  The case was ultimately resolved by a grant of summary judgment in favor of the coworker, based in part on the severance agreement's release paragraph.  The first complaint is immaterial to this appeal.

*D.  Gonzales's 2018 Lawsuit:  The Second Complaint*

In January 2018, Gonzales filed another complaint (the second complaint)—not against her former coworker, but instead against the same defendants named in this case (i.e., St. Joseph's, Gonzalez, and Coughlin).  The second complaint alleged four causes of action, labeled:  (1) "civil conspiracy," (2) "wrongful termination based on hearsay and fraud," (3) "fraud," and (4) "vicarious liability."

Gonzales's second complaint attacked the enforceability of the severance agreement by alleging Gonzalez (a manager at St. Joseph's) and Coughlin (its human resources representative) committed fraud by "trick[ing Gonzales] into signing a waiver not to sue St. Joseph['s] in exchange [for] a reinstatement and a promise that St. Joseph['s] would not tell anyone that she was fired."  This complaint alleged the coworker (who Gonzales sued in the first complaint) had "published" lies about Gonzales, and that Coughlin and Gonzalez had conspired to "terminate [Gonzales's] employment . . . based on the lies."

Gonzales's second complaint alleged "[t]he conspiracy continue[d] . . . because [Gonzalez and Coughlin] continue[d] to slander" Gonzales and the codefendants "committed perjury by filing a [r]estraining [o]rder [*sic*] against [Gonzales] based on events that did not happen."  The complaint also alleged St. Joseph's promised it "would not say that [Gonzales] was forced to resign or was terminated," but that "[a]round

---

[1]  Given our dispositive conclusion on claim preclusion, we do not decide whether some of Gonzales's labeled "causes of action" in her complaints were actual causes of action recognized by California law.

4

November 2017," Gonzales was "let go from her then current job in another healthcare company" a few days after receiving a message from a lawyer representing St. Joseph's that Gonzales "should walk away from [her 2016 lawsuit] or it might get worst [*sic*] for her."

The defendants—St. Joseph's, Gonzalez, and Coughlin—filed an anti-SLAPP motion attacking the second complaint's allegations. They asserted "the gravamen of [the] claims . . . involved . . . protected activity" arising from the restraining order petition and so was protected under anti-SLAPP law[2] in addition to being absolutely privileged under the litigation privilege statute, Civil Code section 47. Gonzales opposed by asserting her allegations did not "fall[] within the [a]nti-SLAPP statute" because they did "not concern an issue of public interest." (Capitalizations omitted.) The trial court granted the motion and struck the second complaint "and each cause of action asserted therein." There is no record that Gonzales sought leave to file an amended complaint or appealed the court's order.

*E. The Present Litigation: The Third Complaint*

   1. The Allegations

In 2019, Gonzales filed the complaint underlying this appeal (the third complaint). It alleges against St. Joseph's, Gonzalez, and Coughlin, seven causes of action, labeled: (1) "breach of contract," (2) "fraud," (3) "violation of public policies," (4) "conspiracy to commit fraud," (5) "harassment," (6) "intentional interference with prospective economic relations," and (7) "vicarious liability."

---

[2]  The anti-SLAPP law is codified at Code of Civil Procedure section 425.16. "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

5

Gonzales's third complaint also attacks the enforceability of the severance agreement. It alleges the agreement's provisions violate California public policies and that St. Joseph's "tricked [Gonzales] into signing [the] agreement that waived away her civil rights," by "promis[ing] her reinstatement if and only if she sign[ed the] agreement," even though its provisions "contradicted [the purported] promise." The complaint alleges Coughlin communicated with Gonzales only after three months elapsed from the agreement signing so that Gonzales "would lose her right to file an EEOC complaint for harassment and discrimination."

The third complaint alleges that St. Joseph's allowed Gonzales to be "verbally and physically assault[ed]" by her former coworker, who "fabricated" an altercation and "harassed [Gonzales] by publishing untrue stories." The complaint alleges that then-manager Gonzalez "retaliated against [Gonzales] by openly harassing her to make her resign on her own volition," but also, alternatively, that St. Joseph's "fired [Gonzales] despite her good performance reviews."

On postagreement events, the third complaint alleges "St. Joseph's fabricated a text message" to support its restraining order petition against Gonzales, to portray her "as crazy, violent, incompetent and a stalker." The complaint also alleges alternatively that the severance agreement was enforceable and breached. It alleges St. Joseph's "first breached the agreement when . . . Coughlin denied [Gonzales her purportedly] promised reinstatement . . . again by filing a cause of action [i.e., the restraining order petition] based on events that allegedly happened during [Gonzales's] employment," and breached the agreement again when Coughlin and Gonzalez "conspired . . . [to] . . . commit[] perjury by claiming [Gonzales] was fired for misbehavior, and by attesting to alleged past incidents that, whether true or not, should have been already released under the agreement."

The third complaint also alleges St. Joseph's contacted "another employer of [Gonzales] and got her terminated again." It specifies that after Gonzales filed her first

6

complaint, Gonzales's former coworker and manager Gonzalez threatened Gonzales—
"'[i]f you do not walk away from this case, things will get wors[e] for you'"—and, a few
days later, Gonzales was "let go from her job [at] another company."

2.  The Trial Court Sustained the Defendants' Demurrer

The defendants' filed a demurrer arguing, among other things, that
Gonzales's causes of action were barred by the doctrines of claim preclusion and issue
preclusion.  In the trial court's ruling sustaining the demurrer, the court granted the
defendants' request for judicial notice of Gonzales' first and second complaints.  The
court cited to *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82, for the well-
established principle that the doctrine of claim preclusion bars not only claims actually
litigated in a prior proceeding, but also claims that could have been litigated.  The court
denied leave to amend because Gonzales had not shown a possibility she could
successfully amend her complaint to avoid claim preclusion.

**DISCUSSION**

**I.  CLAIM PRECLUSION BARS GONZALES'S CAUSES OF ACTION**

On appeal, Gonzales contends we should reverse the trial court's judgment
because, among other issues, the court incorrectly concluded claim preclusion applies to
her third complaint.  Gonzales asserts "[t]he [d]efendants [have] fail[ed] to prove that this
case is covered by the res judicata" doctrine because her third complaint involves
"different causes of action based on different events than that of the other cases' causes
of action that [she] filed before."

For the reasons discussed below, we conclude claim preclusion bars
Gonzalez's causes of action in the third complaint based on her second complaint against
the same defendants.

7

*A. Standards of Review*

A demurrer can attack a complaint by asserting a defense appearing from its allegations or any matter of which the court is required to take judicial notice. (Code Civ. Proc., § 430.30, subd. (a); see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793, 805 (*Boeken*).) We read the complaint as a whole and its parts in their context to give it a reasonable interpretation. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

We review de novo a trial court's decision to sustain a demurrer and review a decision to deny leave to amend for abuse of discretion. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) The appellant bears the burden of showing error. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) The burden applies equally to appellants representing themselves as those represented by counsel (see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985) and includes an obligation to "'[s]tate each point [asserted] under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority.'" (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179, citing Cal. Rules of Court, rule 8.204(a)(1)(B)] (*Pizarro*).)

*B. The Law of Claim Preclusion*

"The doctrine of res judicata or claim preclusion dictates that in ordinary circumstances a final judgment on the merits prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 844 (*Wassmann*).) "Causes of action are considered the same if based on the same primary right." (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 325 (*Citizens*); see *Boeken, supra*, 48 Cal.4th at p. 798 ["under the primary rights theory, the determinative factor is the harm suffered"].) Claim preclusion "encompasses '"matters which were raised or could have been raised, on matters litigated or litigable"'" in the prior action." (*Wassmann, supra*, 24 Cal.App.5th at p. 844.)

"The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions." (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202.) "'""The doctrine . . . rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.'"" [Citation.] "'"If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged."'"" (*Wassmann, supra*, 24 Cal.App.5th at p. 844; accord *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 92-93.)

*C. Application of the Law of Claim Preclusion to the Causes of Action in Gonzales' Second and Third Complaints*

At the outset, we note that even outside of our review for claim preclusion, the severance agreement would, at a minimum, appear to bar causes of action relying on preagreement events as well as Gonzales's assertions that her employment with St. Joseph's should be reinstated. The agreement has a provision that Gonzales would not seek further employment from St. Joseph's. and repeatedly confirmed that Gonzales understood the agreement's terms before she signed it.

We need not decide the merits of Gonzales's attacks on the severance agreement because her arguments for reversal fail on the fundamental ground of claim preclusion.[3] The court correctly sustained defendants' demurrer because all of Gonzales third complaint's causes of action were either expressly raised in Gonzales's second complaint or could have been raised there.

_____

[3] We refer to the doctrine as "'claim preclusion' rather than 'res judicata.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.)

As noted, Gonzales's second lawsuit ended after the trial court's grant of defendants' anti-SLAPP motion against all of Gonzales's causes of action. Gonzales did not appeal, and her failure to do so rendered the ensuing judgment final on the merits for purposes of claim preclusion. (See *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1174 ["finality" achieved after "an appeal from the trial court judgment has been exhausted or the time to appeal has expired"]; see also *Lockwood v. Sheppard, Mullin, Richter & Hampton* (2009) 173 Cal.App.4th 675, 682 [dismissal after grant of anti-SLAPP motions was "on the merits"].) It is too late now for Gonzales to argue the trial court erred by granting defendants' anti-SLAPP motion. Dismissal of the second lawsuit is final, and, even if erroneous, is on the merits for purposes of claim preclusion. (See *Moffat v. Moffat* (1980) 27 Cal.3d 645, 654.)

The defendants assert in their respondent's brief that all of the third complaint's causes of action are barred by claim preclusion "[b]ecause [Gonzales]'s claims here fall within the scope of the prior lawsuit [i.e., the second complaint]." Gonzales has forfeited this dispositive point by failing to address the trial court's citation for it in the court's demurrer ruling and ignoring the defendants' argument on it in her reply brief. (*Pizarro, supra*, 10 Cal.App.5th at p. 179.)

In any event, claim preclusion applies to all three categories of harm alleged in Gonzales's third complaint, namely, harm based on the purported unenforceability of the severance agreement, on preagreement events, and postagreement events including purported breaches of the agreement. (*Citizens, supra*, 205 Cal.App.4th at p. 325.) As described in detail below, all of these claims were based on events allegedly occurring *before* the second complaint.

On the enforceability of the severance agreement, Gonzales's third complaint merely alleges an additional theory for the same right to employment as in her second complaint. (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 341; see *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 [claim preclusion bars

10

"""piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief"""].)

The third complaint's allegations of harm based on postagreement events do not fall outside the scope of allegations previously made in the second complaint. (*Wassmann, supra*, 24 Cal.App.5th at p. 844.)  On the subject of her subsequent employment, as we noted above, Gonzales alleged in her second complaint that counsel for St. Joseph's threatened Gonzales just before she "was let go from her then current job in another healthcare company," around November 2017.  In her third complaint, Gonzales realleges receiving the same type of threat but attributes it to her former coworker and defendant Gonzalez.

Gonzales's third complaint includes a sixth cause of action for "intentional interference with prospective economic relations" that was not expressly pleaded before. In it, Gonzales alleges she "continues to lose employment because the false and malicious statements [purportedly published about her] can be found by [G]oogling [Gonzales's] name."  But in both of her appellate briefs, Gonzales fails to explain why the allegations could not have been raised in the second complaint.

Accordingly, the allegations in the third complaint are barred by claim preclusion.  They are related to the same subject-matter—Gonzales's relationship with St. Joseph's and its employees based on her past employment and the severance agreement—and they present issues that were raised in her second complaint. (*Wassmann, supra*, 24 Cal.App.5th at p. 844.)

Gonzales is mistaken about what is barred by claim preclusion and why. For example, she conflates claim preclusion with *issue* preclusion by arguing the former requires our conclusion that an "issue decided in the prior adjudication [was] identical with the one presented in the [present] action."  For the reasons discussed above, Gonzales's statement of the law is incorrect.  (*Wassmann*, *supra*, 24 Cal.App.5th at p. 844; see also *Mark v. Spencer* (2008) 166 Cal.App.4th 219, 229.)  The trial court

11

correctly sustained the defendants' demurrer to Gonzales's third complaint based on claim preclusion.

## II. Gonzales Has Not Shown She Could Amend Her Complaint to Overcome Claim Preclusion

Finally, Gonzales has failed to demonstrate a reasonable possibility of amending her complaint to overcome the application of claim preclusion in this case. Gonzales has not presented any meaningful discussion about how she could amend (*Pizarro, supra*, 10 Cal.App.5th at p. 179) to carry her burden of proving there is a reasonable possibility of overcoming claim preclusion through amendment. (*Keyes v. Bowen*, *supra*, 189 Cal.App.4th at p. 655.) The trial court did not err by denying leave to amend.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.


12